HOPKINS, J.T.C.,
concurring.
I fully agree with the conclusion reached in the majority opinion. Further, I also believe that the same result would be reached, even if c. 117 were not enacted.
*245 My conclusion is based upon a review of the definition of personal property, for tax purposes, as set out in Bayonne City v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979) and Bostian v. Franklin State Bank, 1 N.J.Tax 270 (Tax Ct.1980), aff’d 179 N.J.Super. 174, 2 N.J.Tax 391, 430 A.2d 1140 (App. Div.1980). Bayonne’s legal principles, as thoughtfully analyzed in the Bostian Tax Court opinion and specifically approved at the appellate level, would constitute the applicable law, in the absence of c. 117, making the refinery still taxable as real estate.
The Bayonne opinion interpreted N.J.S.A. 54:11A-2(b)(2), a definitional section of the Business Personal Property Tax Act, for the purpose of determining whether three cranes were personalty and, therefore, not subject to local property taxation as real estate fixtures. The cranes involved were large, 500-ton units, which moved on wheels over rails and were electrically powered by having “shoes” run along suspended bus bars. The cranes were “readily movable” and similar equipment had been moved on barges from New Jersey to Houston, Texas. As such, they had characteristics that were comparable to electrically powered railroad locomotives.
N.J.S.A. 54:11A-2 defines personal property, used in business, which is subject to the personal property tax, as tangible goods and chattels used or held for use in any business transaction, activity or occupation conducted for profit, but not including:
(2) Goods and chattels so affixed to real property as to become a part thereof and not to be severable or removable without material injury thereto____
Bayonne interpreted the statute to convey a legislative intent to eliminate the “institutional test” in determining the taxability of such business fixtures as real estate. It concluded that the appropriate definition of “material injury,” as contained in the statute, was to exclude from the personal property definition, and thus make subject to real property taxation, “only those chattels the removal of which will do irreparable or serious physical injury or damage to the freehold.” That court, *246 accordingly held that the cranes were personalty and not subject to real property taxation.
Following Bayonne, the Tax Court opinion in Bostian v. Franklin State Bank, supra, was published. The court there noted that the classification of property as realty or personalty for tax purposes may differ from a classification for other purposes. 1 N.J.Tax at 275-276. See also 5 Powell, Real Property (1986) pars. 659-660. Further, it noted that the institutional doctrine is merely a definition of material injury, i.e., the functional essentiality of the chattel to the use of the realty to which it was attached, so that removal of the chattel effectively precludes usage of the property. The Bostian court pointed out that the legislative purpose underlying the antecedent phrase, “goods and chattels so affixed to real property as to become part thereof,” required a construction in terms of the basic law of fixtures, i.e., determination of the point at which chattels affixed to realty lose their identity as chattels and become part of the realty. It held that a chattel was affixed to the realty when it was (1) physically affixed to the realty or some part thereof; (2) appropriated to the use or purpose of that part of the realty to which it was affixed; and (3) the party making the annexation intended a permanent accession to the real estate. The Bostian opinion was affirmed by the Appellate Division in an opinion which stated, in part, that the Tax Court judge had decided the case on soundly reasoned conclusions of law.
Following Bostian, the next published Tax Court opinion involving personal property taxation was Wiesenfeld v. Taxation Div. Director, 3 N.J.Tax 3 (Tax Ct.1981). That case involved the issue of whether bowling alleys and equipment at a bowling center constituted personalty under the Business Personal Property Tax Act. Again, at issue, was the “material injury” test. Following Bostian, the court concluded that under the principles enunciated in Bayonne and Bostian, the bowling alleys and equipment were fixtures which had become annexed to the real property while “autobars,” which were aids in dispensing beverages, were not so affixed as to be treated as *247 real property. Further, in reliance upon the Bostian opinion which took into consideration the requirement that the fixtures be attached to the realty, it was held that glass doors, located at the entrance to the bowling center and hinged in the concrete foundation below floor level, were part of the realty.
Subsequent to Bostian and Wiesenfeld, a Tax Court opinion, written by a different judge, disagreed with the reasoning set out in Bostian, and concluded that the equal emphasis upon the fixture being attached to the realty was not in accord with the Bayonne opinion. Sta-Seal, Inc. v. Taxation Div. Director, 5 N.J.Tax 272 (Tax Ct.1983), aff’d, 6 N.J.Tax 345 (App.Div.1984), involved the taxability, as realty, of an asphalt plant. Specifically, the court in Sta-Seal found that the appropriate test was the single factor test of “material injury” as defined in Bayonne. In so restricting the exclusionary definition which precluded certain fixtures from being taxed under the Business Personal Property Tax Act, it broadened the definition of those fixtures to be excluded from taxation as real property, despite the fact that such fixtures were physically affixed to the realty; appropriated to the use or purpose of that part of the realty to which they were affixed; and the party making the annexation intended a permanent accession to the realty. On appeal, the Appellate Division affirmed Sta-Seal. However, in so affirming Sta-Seal, the appellate court held that the conclusion reached was within the rule established in Bayonne. It then stated:
Significantly, in this case, in 1978 and 1979, the taxpayer dismantled its “Madsen” asphalt plant and replaced it with components of a “McCarter” plant. Most of the apparatus which is part of the Madsen plant was transferred to another quarry site in New Jersey.... [6 N.J.Tax at 346]
The above is important in that in affirming the Tax Court opinion in Sta-Seal, the appellate court recognized the fact that the asphalt plant involved did not meet the “required attachment” test set out in Bostian. Accordingly, I conclude that the Sta-Seal case did not overrule the Appellate Division affirmance of Bostian.
*248 The next point in time at which the “material injury” test was discussed, at the appellate level, was in the case of Minetto v. Northvale Boro., 210 N.J.Super. 312, 509 A.2d 807 (App.Div. 1986). The court affirmed a Tax Court finding that there was sufficient credible evidence that bowling fixtures—alleys, pinsetters and ball returns—were personal property and not subject to assessment for real property tax purposes, since the equipment could be removed from the building without serious physical damage to the freehold. That part of the Appellate Division, in affirming the Tax Court’s findings and reliance upon Bayonne, held that the “institutional doctrine” test, which it stated had been relied upon in Wiesenfeld v. Taxation Div. Director, supra, had been rejected. In so stating, that court cited Sta-Seal, Inc. v. Taxation Div. Director, supra, and Stem Bros., Inc. v. Alexandria Tp., 6 N.J.Tax 537 (Tax Ct.1984). In this respect, it should be noted that Sta-Seal did not overrule the two-factor test enunciated in Bostian and followed in Wiesenfeld. Actually, Sta-Seal held that the asphalt plant there involved constituted personalty under the Bayonne reasoning and specifically pointed to the fact that it had been dismantled and replaced with components of another type plant. Further, most of the original apparatus was transferred to another quarry site in New Jersey where it was put in use. Those characteristics would remove it from real property taxation under the Bostian two-factor test. Reliance upon the unappealed Tax Court opinion of Stem Bros. v. Alexandria Tp., supra, written by the same judge who wrote the Sta-Seal opinion, is not considered authority to overrule the Appellate Division’s specific affirmance of the applicable law set out in Bostian.
Based upon the above, I conclude that the Bostian principles are still applicable and appropriately implement the principles enunciated in Bayonne. Applying the two-factor test set out in Bostian, it is obvious that the subject refinery, which has remained on the subject site for approximately 40 years, was and is intended to be a permanent accession to the land.
*249 A literal application of taxpayer’s legal interpretation of Bayonne’s principles would obviously remove the refinery from local property taxation. It would also remove from local property taxation nearly all business and commercial real property improvements. I recognize, and the record supports the conclusion, that practically any such fixture, presently taxable as a real property improvement, can be moved without irreparable or serious injury to it or to the land. The London Bridge now rests in a resort area in Arizona.
It should be further noted that taxpayer’s effort to apply a single “material injury” test to classify the subject refinery as personalty contains inherent constitutional flaws.
N.J. Const. (1947), Art. VIII, § 1, par. 1(a), known as the “uniformity clause,” reads as follows:
1. Taxation; assessment.
1. (a) Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.[1]
The provisions of the uniformity clause were recognized by our Supreme Court in the landmark case of Switz v. Kingsley, 37 N.J. 566, 182 A.2d 841 (1962), when it stated:
We need not decide the meaning of the exemption provision of Art. VIII, § 1, par. 2, in relation to real property. It is enough to note that with respect to real property made taxable by statute for local purposes, Art. VIII, § 1, par. 1, quoted above, explicitly forbids preferential treatment. It expressly requires that all real property assessed and taxed locally or by the State for allotment and payment to taxing districts “shall be assessed according to the same *250 standard of value” and “shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of the taxing district.”
Art. VIII, § 1, par. 1, however, imposes no such limitation upon the treatment of personal property. The mandate for sameness in standard of value and tax rate is limited to real property, [at 584-585, 182 A.2d 841]
The uniformity clause was again reviewed in N.J. State League of Municipalities v. Kimmelman, 105 N.J. 422, 522 A. 2d 430 (1987), in a learned opinion which discussed the history of its formulation and enactment.
When the Constitution was ratified in 1947, the definition of real property included fixtures such as refineries of the type here involved. National Lead Co. v. Sayreville Boro., 132 N.J.Super. 30, 331 A.2d 633 (App.Div.1975). The broadened definition of personalty espoused by taxpayer, with the resultant reclassification of certain fixtures from real property to personal property and the consequent removal of those fixtures from local property taxation, would fail the litmus test of the uniformity clause, which requires that all real property, taxed locally or by the State for allotment and payment to taxing districts, shall be assessed according to the same standard of value and shall be taxed at the general tax rate of the taxing district in which the property is situated and for the use of that taxing district. Taxpayer's efforts to have Bayonne interpreted to redefine real property in order to exclude such refineries would constitute an unconstitutional removal of real property from Perth Amboy’s local property tax base. A statute should be construed to avoid constitutional defects if it is “reasonably susceptible” of such construction. N.J. Bd. of Higher Ed. v. Shelton College, 90 N.J. 470, 478, 448 A.2d 988 (1982). Accordingly, N.J.S.A. 54:11A-2(b)(2) must be interpreted to require the two-factor test enunciated in Bostian.
I conclude that regardless of whether or not c. 117 is applicable to the years here involved, the refinery must still be taxed as real property.
Judge Crabtree joins in this concurring opinion.

As real estate, the refinery would be taxable by Perth Amboy on the basis of its full market value at effective tax rates for 1984 and 1985 of 2.63% and 2.42% respectively. N.J.S.A. 54:4-23, :3-13, -17 and Division of Taxation, Annual Report for 1985, at 219. As personalty, the refinery would be taxed by the State based on 50% of its original cost at a rate of 1.3%. N.J.S.A. 54:11A-5 and -4. Further, any such personalty acquired or brought into the State after January 1, 1977, is not subject to the business personal property tax. N.J.S.A. 54:11A-3.1.